[No. 6236–4–II.  Division Two.  September 10, 1984.]

PATTI BAILEY, *Appellant*, v. THE TOWN OF FORKS, *Respondent*.

*John R. Connelly, Jr.,* for appellant.

*Sidney R. Snyder, Jr.,* for respondent.

REED, J.—Patti Bailey appeals from the dismissal of her negligence action against the Town of Forks. She alleged that failure of one of its police officers to prevent a drunken driver from taking to the highways caused an accident in which she was severely injured. Finding that no duty was owed by the officer to Bailey in the particular circumstances, we affirm.

The dismissal took the form of a judgment on the pleadings. CR 12(c). In ruling on such a motion, the trial court must accept as true every fact well pleaded by the nonmoving party. *Pearson v. Vandermay,* 67 Wn.2d 222, 407 P.2d 143 (1965). The complaint, which was Bailey's only pleading, alleges the following facts:

On or about August 5, 1979, at approximately 2:10 a.m., on the Bogachiel Road, about five miles from Forks, Washington, an automobile–motorcycle collision occurred when a pickup truck driven by Harvey Medley made an illegal left turn in front of the motorcycle driven by Paul W. Peterson. Mr. Peterson was fatally injured and his passenger, plaintiff PATTI BAILEY, was seriously and permanently injured.

Harvey Medley was intoxicated at the time of the accident.

Mike Riddle, a duly authorized police officer and agent of the Town of Forks, *was in official contact with Harvey Medley* shortly before the above–described accident regarding Medley's involvement in an altercation at or near the Vagabond Lounge. Officer Riddle, as an agent of the Town of Forks, and while operating within the scope

of that agency, knew or should have known that Harvey Medley was intoxicated to such an extent as to be physically and legally unfit to drive his pickup truck and therefore, a hazard to other users of the highways. Nevertheless, *Officer Riddle* ordered *Harvey Medley to leave the area and personally observed him enter his truck "behind the wheel."*

Plaintiff PATTI BAILEY, suffered severe physical injuries requiring several surgeries and a long period of hospitalization. She suffered and continues to suffer pain, discomfort, disfigurement and has significant permanent injury. She has incurred medical expenses and will continue to incur such expenses. She has been unable to work and will probably be physically unable to return to her former occupation.

(Italics ours.)

Relying on these facts Bailey further alleged that the officer was negligent "in failing to prevent Harvey Medley from driving his vehicle while obviously impaired by intoxication." The trial court dismissed the action on the ground that the Town of Forks was immune from liability for the actions of its officer, even though the latter may have been negligent. Bailey appeals, claiming (1) the trial court erred in dismissing the action on the basis of sovereign immunity, and (2) the facts pleaded establish a cause of action for negligence.

On the strength of recent decisions of our State Supreme Court, the claim of sovereign immunity was withdrawn by the Town of Forks at oral argument. Consequently, we must determine only whether the facts pleaded establish a cause of action for negligence.

As stated in *J & B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 304, 669 P.2d 468 (1983):

The Legislature, by adopting RCW 4.96.010, declared that municipal corporations "shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers . . . to the same extent as if they were a private person or corporation". It should be noted, however, that this type of legislation creates no new causes of action, imposes no new duties and brings into being no new liability. At best it gives new life to an

existing, but previously unenforceable, potential liability or remedy by removing the defense of sovereign immunity.

(Citations omitted.)

Therefore, in order to plead an actionable case of negligence, Bailey must be able to demonstrate the existence of a duty of care owed to her by the defendant. *See Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 284, 669 P.2d 451 (1983); *J & B Dev. Co. v. King Cy., supra.* The Town of Forks contends that under the "public duty doctrine," the officer owed no duty of care to Bailey upon which liability for negligence could be imposed. Bailey argues, however, under various theories, that the facts of this case support a finding of such a duty.

We disagree with Bailey's first contention that this State does not recognize the public duty–private duty dichotomy. As stated in *J & B,* 100 Wn.2d at 304–05,

Nevertheless, the "public duty doctrine" has a third logical application in tort litigation. A duty to the public in general is usually considered a duty to no one in particular (*i.e.,* the "public duty doctrine"). When considered in combination with the "special relationship" rule, however, it becomes a mechanism for focusing upon whether a duty is actually owed an individual claimant rather than the public at large. The "special relationship" rule is in fact the focusing tool.

The public duty doctrine recognizes that the duties of public officers are normally owed only to the general public and that a breach of such a duty will not support a cause of action by an individual injured thereby. The doctrine generally applies to the actions of law enforcement officers such as Officer Riddle, while acting within the scope of their authority. *Chambers–Castanes v. King Cy.,* 100 Wn.2d at 284. Our courts have recognized, however, that certain circumstances may create an exception to this general rule and will justify imposition of a duty owed to the individual. First, if there is a clear statement of legislative intent to identify and protect a particular and circumscribed class of persons, a member of that class has an

individual claim for violation of the ordinance or statute creating the duty. *Baerlein v. State,* 92 Wn.2d 229, 595 P.2d 930 (1979) (securities act did not impose duty to individual investors); *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975) (negligent operation of emergency vehicle statute intended to protect individual members of the public).

Second, if a "special relationship" exists between the public officer and the plaintiff, a duty owed to the individual may arise. *J & B Dev. Co.,* 100 Wn.2d at 305–07; *Campbell v. Bellevue,* 85 Wn.2d 1, 10, 530 P.2d 234 (1975). For example, "an actionable duty to provide police services will arise if, (1) there is some form of privity between the police department and the victim that sets the victim apart from the general public and (2) there are explicit assurances of protection that give rise to reliance on the part of the victim." (Citations omitted.) *Chambers–Castanes v. King Cy.,* 100 Wn.2d at 286. In *Chambers–Castanes,* a crime victim's repeated telephone calls to the police and the latter's continued assurances that help was on the way satisfied these requirements and created a "special relationship" sufficient to impose a duty to the victim.

Neither of these recognized exceptions to the public duty doctrine applies in this case. Officer Riddle had no contact of any sort with the accident victims prior to the collision. Nor have we been cited to any clear legislative intent or clearly enunciated policy to support the existence of a duty owed by officers to individuals in these circumstances. Bailey's reliance upon the general criminal statutes governing the operation of motor vehicles upon the highways is misplaced. These statutes evidence a legislative concern only for the public in general and not for any particular member thereof or identified class. *Cf. Chambers–Castanes v. King Cy., supra; Walters v. Hampton,* 14 Wn. App. 548, 543 P.2d 648 (1975) (police chief's duty to prosecute all ordinance violations creates no individual duty). In this sense, these statutes differ from those involved in *Mason v. Bitton, supra,* and *Halvorson v. Dahl,* 89 Wn.2d 673, 574 P.2d 1190 (1978) (housing code intended to protect

individual occupants of buildings unfit for human habitation). Consequently, Bailey's claim does not fall within any recognized exception and would seem to fit squarely within the rule of the public duty doctrine—a duty owed to all is a duty owed to no one. *Halvorson v. Dahl, supra; Baerlein v. State, supra.*

Bailey claims yet another exception applies to her. She argues that *Hosea v. Seattle,* 64 Wn.2d 678, 393 P.2d 967 (1964) and Restatement (Second) of Torts § 319 (1965) require a finding of a duty owed to her personally by the officer. The theory is that Officer Riddle "took charge" of Medley and breached his duty to the plaintiff, as a member of the general motoring public, because he failed to control or prevent Medley's drunken operation of his vehicle.

Before disposing of this assertion, we observe that Bailey's claim that Officer Riddle "took charge" of Medley surfaced for the first time during argument on the CR 12(c) motion. There is no such allegation in the complaint. Nor is it alleged that Officer Riddle directed Medley to get into his vehicle and drive away, thus affirmatively placing a drunken driver on the roads. In any event, the "took charge" claim is merely Bailey's conclusion from the facts pleaded; as such, it has no significance.

We note also that Bailey, when faced with defendant's challenge, made no effort to amend her complaint, either before or after the court's ruling. CR 12(c); CR 15(a). Nor did Bailey file any affidavits to support a different version of the facts, so as to convert the proceeding to one for summary judgment, where she would have had the benefit of all the favorable inferences from the evidence. CR 12(c); CR 56. In these circumstances we assume Bailey was unable to make the necessary allegations or furnish the requisite proof that Officer Riddle had indeed taken affirmative action to place an incompetent operator upon the highways. Although a CR 12(c) motion requires us to accept as true the *facts well pleaded,* and the allegations are entitled to the same indulgence and favorable inferences as would be the case had this been a CR 12(b)(6) dismissal, no addi-

tional or hypothetical facts conceivably entitling Bailey to relief are presented on appeal. *Madison v. General Acceptance Corp.,* 26 Wn. App. 387, 612 P.2d 826 (1980); *Roth v. Bell,* 24 Wn. App. 92, 600 P.2d 602 (1979).

We have undertaken the foregoing discussion because of Bailey's reliance upon Restatement (Second) of Torts § 319 (1965) and those cases and authorities we have found that recognize the distinction between a failure to perform a duty on the one hand, and the negligent performance of a duty once undertaken.[1]

Having narrowed Bailey's stance on appeal, we now address her reliance on *Hosea* and Restatement (Second) of Torts § 319. We find that reliance to be misplaced. In *Hosea* the court upheld a negligence action brought against the City of Seattle by the victims of a car accident caused by a minimally supervised city jail inmate (trustee) who was driving while intoxicated. The *Hosea* court found that the police officers had a duty to supervise and control the inmate *within their custody.* No such custodial duty exists in this case. Similarly, Restatement (Second) of Torts § 319 (1965) imposes an individual duty only on "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled . . ." As noted, the complaint does not allege facts to support the conclusion that Officer Riddle took charge or control of Medley; it merely avers that he had "official contact" with Medley and ordered him to leave the area of the altercation; consequently a duty under section 319 did not arise.

Bailey next contends that the rationale of *Petersen v. State,* 100 Wn.2d 421, 671 P.2d 230 (1983) applies in this

---

[1]No such case or authority is cited in Bailey's brief, which consistently couches its descriptions of the alleged breach of duty in terms of a failure to act. Nowhere does she argue that Officer Riddle, by any affirmative negligent act, was *the initiating efficient* cause of plaintiff's injuries.

case. Petersen was the victim of a car accident caused by the reckless driving of a mental patient prematurely released from Western State Hospital. Relying on Restatement (Second) of Torts § 315 (1965),[2] the *Petersen* court held that a "special relation" exists between a psychiatrist and a known–to–be dangerous patient, out of which arises an affirmative duty to take reasonable precautions to protect *anyone* who might foreseeably be endangered by the premature release of the patient. *Petersen v. State,* 100 Wn.2d at 428. Consequently, the court was able to uphold the negligence action against Western State Hospital and the doctor, despite the general rule of nonliability for acts of third persons.

Bailey urges us to extend the reasoning in *Petersen* to find an individual duty in situations such as this case, where an officer makes "contact" with an obviously intoxicated person prior to an accident and, in the language of Bailey's brief, fails "to take precautionary measures to protect her from the possible consequences." Although the *Petersen* opinion makes no mention of the public duty doctrine, Bailey is in essence arguing that it provides yet another "special relationship" exception to the public duty doctrine. We cannot agree.

First, in the absence of some language indicating the *Petersen* court considered the public duty doctrine, we cannot so interpret its holding. Second, we believe that the "relationship" between the officer and Medley was too tenuous and unsubstantial to warrant application of any such exception. A review of cases applying Restatement (Second)

---

[2] This section states:

"There no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

"(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

"(b) a special relation exists between the actor and the other which gives to the other a right to protection." Restatement (Second) of Torts § 315 (1965).

of Torts § 315 (1965) discloses that a duty to a particular individual will be imposed only upon a showing (allegation) of a definite, established and continuing relationship between the defendant and the actor. *E.g., Petersen v. State, supra; Tarasoff v. Regents of Univ. of Cal.,* 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976) (psychiatrist–patient); *Bradley Ctr., Inc. v. Wessner,* 250 Ga. 199, 296 S.E.2d 693 (1982) (hospital–patient); *Maroon v. State,* ___ Ind. App. ___, 411 N.E.2d 404 (1980) (hospital–patient); *Christensen v. Epley,* 36 Or. App. 535, 585 P.2d 416 (1978) (custodian–inmate). No such relationship is alleged here. The facts pleaded indicate only that the officer "was in official contact with Harvey Medley shortly before the above–discussed accident." A police officer's mere contact with an intoxicated person hardly creates the same type of relationship as exists between a psychiatrist and his patient, or a custodian and his inmate. In our opinion, such a fleeting contact fails to rise to the stature of a "special relationship" which would justify imposing an affirmative duty of care to prevent an intoxicated person from causing harm to others. *Evett v. Inverness,* 224 So. 2d 365 (Fla. Dist. Ct. App. 1969); *Shore v. Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982). *See also* Annot., *Liability of Municipality or Other Governmental Unit for Failure To Provide Police Protection,* 46 A.L.R.3d 1084 (1972).

In sum, the Legislature has not seen fit to impose—for the benefit of particular individuals as opposed to the general public—any duty on police officers to arrest, detain or otherwise prevent even obviously intoxicated persons from driving their vehicles. Consequently, in the absence of a more compelling "special relationship," plaintiffs such as Bailey must seek redress elsewhere. Because Bailey's claim, even if taken as true, does not establish a legal duty the trial court was correct in granting judgment for the defendant.

Affirmed.

PETRICH, C.J., and WORSWICK, J., concur.

Reconsideration denied November 7, 1984.

Review granted by Supreme Court January 18, 1985.