[No. 7310-2-II. Division Two. July 19, 1985.]

CLYDE V. HOSTETLER, *as Guardian, Appellant,* v.
JOEL E. WARD, ET AL, *Respondents.*

344

*Harold E. Winther* and *Small & Winther,* for appellant.

*Vernon W. Harkins* and *Rush, Kleinwachter & Hannula,* for respondents Ward.

*William H. Griffies, Prosecuting Attorney,* and *Karl D. Haugh, Deputy,* for respondent Pierce County.

REED, A.C.J.—Joel E. Ward, a minor, became intoxicated in a public park maintained by Pierce County. He then drove his parents' car out of the park and, after traveling a short distance on a public highway, struck a motorcyclist, Gerald D. Hostetler. Hostetler suffered severe injuries that rendered him incompetent. His guardian, Clyde V. Hostetler, sought damages from Ward and the County. He now appeals the trial court's order dismissing his action against the latter defendant.[1] We affirm.

---

[1]The Supreme Court denied appellant's request for direct review and transferred the case to this court pursuant to RAP 4.3.

# I

## SCOPE OF REVIEW

■ Although the dismissal was granted pursuant to CR 12(b)(6), the trial court considered matters outside the pleadings. Therefore, under CR 12(b), the dismissal is regarded as a summary judgment. When reviewing a summary judgment, the appellate court engages in the same inquiry as the trial court. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). Summary judgment is proper only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Hartley v. State,* 103 Wn.2d at 774.

In determining whether a genuine issue exists as to any material fact, "[t]he court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party." *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A "material fact" is one upon which the outcome of the litigation depends in whole or in part. *Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 511, 598 P.2d 1358 (1979); *Peterick v. State,* 22 Wn. App. 163, 180, 589 P.2d 250 (1977), *review denied,* 90 Wn.2d 1024 (1978). The moving party has the burden of presenting evidence showing there are no factual disputes and that, as a matter of law, judgment is proper. *Hartley v. State,* 103 Wn.2d at 774; *Graves v. P.J. Taggares Co.,* 94 Wn.2d 298, 302, 616 P.2d 1223 (1980).

If the moving party satisfies this burden of proof, the opposing party may not resist summary judgment by resting upon the pleadings, but must present evidence that shows the facts are in dispute. *Mackey v. Graham,* 99 Wn.2d 572, 576, 663 P.2d 490, *cert. denied,* 464 U.S. 894 (1983). That evidence must be such as would be admissible at trial, *Wilson v. Steinbach,* 98 Wn.2d at 438–39; *Jacobsen v. State,* 89 Wn.2d 104, 108, 569 P.2d 1152 (1977), unless the moving party fails to move to exclude the evidence before the trial court's judgment, and thereby waives the deficiency. *Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d

345, 352, 588 P.2d 1346 (1979). However, if the moving party does not sustain its burden of demonstrating, by offering evidence or otherwise, that it is entitled to judgment as a matter of law, summary judgment should not be granted, even if the nonmoving party did not submit any evidence. *Graves v. P.J. Taggares Co.,* 94 Wn.2d at 302; *Jacobsen v. State,* 89 Wn.2d at 108.

In the present case, the County did not submit any affidavits, depositions, or other materials in support of its motion under CR 12(b)(6), nor did it move to exclude any of the evidence plaintiff presented. Therefore, on review, we consider all the facts alleged in the pleadings and affidavit in the light most favorable to plaintiff. CR 56(c). Plaintiff alleged the facts set forth below.

## II
### FACTS ON REVIEW

Pierce County owns or controls a park on the shores of Lake Tapps. At 7 p.m. on June 29, 1981, Joel E. Ward, Norman K. Herbert, and James Joseph Shockey, all under age 21, paid a $1 fee to drive Ward's parents' station wagon into the park. They drove to an isolated area in the park known as Evergreen Point, which was out of view of park personnel, where others were drinking alcoholic beverages. There the three youths consumed forty–eight 12–ounce cans of beer, divided about equally among the three. At approximately 10 p.m., a county official "gave notice to the youths and others of the the park's impending closure and directed their transportation to the public roadway. . . ." Ward and his companions were "considerably handicapped" from drinking the beer. In adherence to the county official's directive, Ward drove out of the park and traveled approximately three to four miles on the public highway before he negligently turned left into the path of an oncoming motorcycle driven by Gerald D. Hostetler. Hostetler suffered the severe injuries previously described, for which his guardian sought to recover damages.

County officials knew the Evergreen Point area was used regularly by many people, including minors, for the consumption of alcoholic beverages. A sign was posted notify-

ing visitors that liquor was banned from the park. When the park's resident caretaker encountered persons drinking liquor, he would advise them it was prohibited. Both Herbert and Shockey, Ward's companions, were aware of the prohibition. In August 1977, a member of the Pierce County Sheriff's Department investigated the area. His report included the following:

> The area known as Evergreen Point . . . is being utilized by persons for the purpose of consuming alcoholic beverages and drugs out of line of sight by park personnel. This area should be closed off.

According to the deposition of the park's caretaker, people drinking liquor in the Evergreen Point area could not be apprehended easily because they could see approaching law enforcement officers from a long distance. He conceded that, because of the area's remote location, closing the park road to the area would have prevented park visitors from using that area for drinking alcoholic beverages.

### III
#### PLAINTIFF'S THEORIES FOR RECOVERY

Plaintiff alleges that Pierce County is liable for Gerald Hostetler's injuries. First, he alleges the County is liable for maintaining[2] the park as a haven for the consumption of alcoholic beverages by minors. Plaintiff's claim is based upon theories of common law negligence, negligence per se, and statutory nuisance (RCW 7.48). Second, plaintiff argues the County is liable for its negligence in failing to enforce laws controlling the use of alcoholic beverages. Third, he argues the County is liable for the negligence of its employee in directing Ward and the others to drive out of the park onto the public highway when the employee knew or should have known that Ward's ability to drive was handicapped by his consumption of intoxicants.

---

[2]Although plaintiff also alleged in his pleadings that the County was negligent in its design of the park, plaintiff has not addressed that issue on appeal. Neither do we.

A

MAINTENANCE OF THE PARK

1. Negligence:

■ We consider first Hostetler's allegation that the County was negligent in its maintenance of the park. He alleges that by this negligence the County allowed, tolerated, or encouraged minors to consume alcoholic beverages in the park. The essential elements of actionable negligence are: (1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause relationship between the claimed breach and the resulting injury. *Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984). Whether a defendant owes a duty to the complaining party is a question of law. *Pedroza v. Bryant,* 101 Wn.2d at 228. The defendant's duty may be predicated on violation of a statute or on common law principles of negligence. *Young v. Caravan Corp.,* 99 Wn.2d 655, 659, 663 P.2d 834, 672 P.2d 1267 (1983); *Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 932, 653 P.2d 280 (1982).

a. Common Law Negligence

■ The common law rule in Washington is that the furnishing of liquor to an able–bodied person generally is not actionable. *Wilson v. Steinbach,* 98 Wn.2d at 438; *Halvorson v. Birchfield Boiler, Inc.,* 76 Wn.2d 759, 762–63, 458 P.2d 897 (1969); *Dickinson v. Edwards,* 37 Wn. App. 834, 682 P.2d 971, *review granted,* 102 Wn.2d 1011 (1984); *Halligan v. Pupo,* 37 Wn. App. 84, 86–88, 678 P.2d 1295 (1984).[3] When stating the reason for this rule, it has been

---

[3]Plaintiff argues that there is a distinction between the commercial and social providing of liquor with respect to the liability that is imposed upon the furnisher, and that we should make a similar distinction with regard to the commercial use of the park for consuming liquor. Assuming, arguendo, that the $1 fee Ward paid to enter the park rendered his admission "commercial," we do not find clear authority supporting the social/commercial distinction as a factor in assigning liability under a common law negligence analysis. Although several cases have alluded to this distinction, *see, e.g., Wilson v. Steinbach,* 98 Wn.2d at 440; *Rhea v. Grandview Sch. Dist. JT 116–200,* 39 Wn. App. 557, 563, 694 P.2d 666 (1985); *Torres v. Salty Sea Days, Inc.,* 36 Wn. App. 668, 670 n.1, 676 P.2d 512, *review denied,* 101 Wn.2d 1008 (1984); *Baughn v. Malone,* 33 Wn. App. 592, 598, 656 P.2d 1118 (1983); *Hulse v. Driver,* 11 Wn. App. 509, 512, 524 P.2d 255, *review*

350

said that "[t]he law . . . recognizes no relation of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor", *Halvorson,* 76 Wn.2d at 762, quoting *State ex rel. Joyce v. Hatfield,* 197 Md. 249, 254, 78 A.2d 754, 756 (1951). It follows from this rule that generally one is under no duty to refrain from furnishing liquor to an able–bodied person. *See Hartley v. State,* 103 Wn.2d at 781.[4] Although exceptions to this rule have been recognized or suggested, *see Wilson v. Steinbach,* 98 Wn.2d at 438, 441, each of these exceptions involves a direct relationship between the defendant's action or inaction and the consumption of liquor by one who becomes a tortfeasor. The relationship between one who, at most, tolerates the consumption of alcohol on his premises, but does not have

*denied,* 84 Wn.2d 1011 (1974), none of these cases actually holds that such a distinction should be made.

In *Halvorson v. Birchfield Boiler, Inc.,* 76 Wn.2d at 762–63, with respect to the common law duty of one who furnishes liquor to an ordinary, able–bodied person, the court made no distinction between the sale of liquor and the gift of liquor. The court stated that the same rule applied in each context. The only social/commercial distinction made in *Halvorson* related to (1) the duties imposed by liquor control laws, and (2) the opportunity of the furnisher to observe the deportment of the recipient of the liquor. 76 Wn.2d at 764–65.

Under the facts of the present case, the park caretaker's opportunity to observe Ward's conduct was not enhanced by exacting the $1 admission fee, as might be the case where a tavern keeper serves a patron individually. The duties imposed by the liquor control laws are discussed separately in this opinion. We find no merit in plaintiff's argument that the $1 fee increased the County's common law duty with respect to Ward's consumption of liquor in the park.

[4]In *Hartley,* our Supreme Court examined the amorphous "proximate cause" element in the negligence formula. After distinguishing "cause in fact" from "legal causation," 103 Wn.2d at 778, the court discussed the components of legal causation. As the court observed, legal causation and the "duty" element in the negligence formula are interrelated, and both elements involve policy considerations as to how far liability for the consequences of defendant's acts should extend. 103 Wn.2d at 779–81. Arguably, it was foreseeable that an intoxicated minor driving away from the park would collide with another motorist, and in the present case the collision occurred shortly after Ward left the park, without any supervening events. We therefore deem it proper, under the circumstances of this case, to analyze the policy considerations in the "duty" and "legal causation" elements under Dean Prosser's classic formulation: "[W]as the defendant under a duty to protect the plaintiff against the event which did in fact occur?" *Hartley v. State,* 103 Wn.2d at 779, quoting W. Prosser, *Torts* 244–45 (4th ed. 1971).

immediate control over that consumption, does not impose a duty upon the owner of the premises to regulate the liquor consumption. *See Halligan v. Pupo,* 37 Wn. App. at 88–89. *See also Rhea v. Grandview Sch. Dist. JT 116–200,* 39 Wn. App. 557, 563, 694 P.2d 666 (1985). We reject plaintiff's contention that the County, by virtue of its ownership and control of the park, had a common law duty to prevent Ward from becoming intoxicated in the park. Moreover, plaintiff has not alleged that Ward continued to consume liquor in the park after his intoxication became "obvious" to county employees.

b. Negligence Per Se

Plaintiff also argues that certain statutes, RCW 26.28-.080,[5] RCW 66.24.481,[6] and RCW 66.44.270,[7] imposed a

---

[5]RCW 26.28.080 states in part:
"Every person who:
"(1) Shall admit to or allow to remain in any concert saloon, or in any place owned, kept, or managed by him where intoxicating liquors are sold, given away or disposed of—except a restaurant or dining room, any person under the age of eighteen years; or,
". . .
"(4) Shall sell or give, or permit to be sold or given to any person under the age of twenty–one years any intoxicating liquor, . . .
". . .
"Shall be guilty of a gross misdemeanor."

[6]RCW 66.24.481 states in part:
"Public place or club—License or permit required—Penalty. No public place or club, or agent, servant or employee thereof, shall keep or allow to be kept, either by itself, its agent, servant or employee, or any other person, any liquor in any place maintained or conducted by such public place or club, nor shall it permit the drinking of any liquor in any such place, unless the sale of liquor in said place is authorized by virtue of a valid and subsisting license issued by the Washington state liquor control board, or the consumption of liquor in said place is authorized by a special banquet permit issued by said board. Every person who violates any provision of this section shall be guilty of a gross misdemeanor." RCW 66.04.010(23) states that the term "public place" includes publicly owned parks. The County has not maintained that its park falls within the exception of RCW 66.04.011.

[7]RCW 66.44.270 states in part:
"Furnishing liquor to minors—Possession, use. Except in the case of liquor given or permitted to be given to a person under the age of twenty–one years by his parent or guardian for beverage or medicinal purposes, or administered to him

352

duty upon the County to prevent Ward, a minor, from drinking in the county park. When legislation clearly manifests the intent to impose a duty, the breach of which may result in civil liability, that legislation establishes the standard of conduct required in a particular situation. Restatement (Second) of Torts § 285(a) & comment *b* (1965). Plaintiff has cited no authority, and we are aware of none, supporting the proposition that the Legislature intended the violation of these criminal statutes[8] to result in civil liability.

■ Even when there is no clear manifestation of legislative intent to impose civil liability for violation of a statute, a court *may* adopt the requirements of a criminal statute as the standard of conduct of a reasonable person. Restatement (Second) of Torts § 285(b) & comment *c* (1965). A court may adopt the statutory requirements as the standard of care when the purpose of the statute is exclusively or in part: (1) to protect a class of persons which includes the one whose interest is invaded; (2) to protect the particular interest which is invaded; (3) to protect that interest against the kind of harm which has resulted; and (4) to protect that interest against the particular hazard from which the harm results. *Young v. Caravan Corp.,* 99 Wn.2d at 659–60; Restatement (Second) of Torts § 286 (1965).

■ RCW 26.28.080 is part of the title governing domestic relations, and is codified in the chapter entitled "Infants." The statute's apparent purpose is the protection of the minor, not the protection of the minor's victim. *Cf. Brennan v. Seattle,* 151 Wash. 665, 669, 276 P. 886 (1929)

---

by his physician or dentist for medicinal purposes, no person shall give, or otherwise supply liquor to any person under the age of twenty–one years, or permit any person under that age to consume liquor on his premises or on any premises under his control. It is unlawful for any person under the age of twenty–one years to acquire or have in his possession or consume any liquor except as in this section provided and except when such liquor is being used in connection with religious services."

[8]RCW 26.28.080 and RCW 66.24.481 each provide that a violation of their respective provisions is a gross misdemeanor. RCW 66.44.175 and RCW 66.44.180 prescribe criminal penalties for violations of RCW 66.44.270.

(the prohibition in RCW 26.28.080 against sale of tobacco to minors is designed to protect the minors). Therefore, the statute does not impose a duty upon the County that is owed to third persons injured by intoxicated minors. *Young v. Caravan Corp.,* 99 Wn.2d at 659–60. *But see Callan v. O'Neil,* 20 Wn. App. 32, 578 P.2d 890 (1978) (suggesting that a violation of RCW 26.28.080 may serve as the basis for an action against a tavern keeper by the injured passenger of an intoxicated minor. It should be observed, however, that the passenger also was a minor who was served beer in violation of RCW 26.28.080).

RCW 66.24.481 and RCW 66.44.270 are part of the Washington State liquor act. However, RCW 66.24.481 is concerned primarily with the licensing of public places that serve liquor, rather than with governing the manner in which the liquor is distributed or consumed. We do not deem it necessary to address that statute in detail, because our analysis of the more specific RCW 66.44.270 includes an analysis of the policy inherent in RCW 66.24.481.

■ RCW 66.44.270 makes it unlawful for anyone to furnish liquor to a person under the age of 21 years or to "permit any person under that age to consume liquor on his premises or on any premises under his control." Plaintiff argues that, by failing to prevent Ward and his companions from consuming liquor in the park, the County "permitted" them to do so in violation of RCW 66.44.270. Webster gives as the principal definition of the verb "permit" the following: "to consent to expressly or formally." *Webster's Third New International Dictionary* 1683 (1966). We believe that, as used in the statute now considered, the term "permit" refers to something more than a mere indifference or passive sufferance, and requires an affirmative assent. *See, e.g., Lambert v. State ex rel. Hunter,* 248 Ala. 487, 28 So. 2d 412 (1946). Our cases construing the verb "permit" in a statute or regulation have found that term satisfied when the defendant had actual or constructive knowledge of the circumstances that foreseeably would lead to the prohibited activity, but only where a defendant also had a significant degree of control over those circumstances. *See, e.g., Reeb,*

*Inc. v. Washington State Liquor Control Bd.,* 24 Wn. App. 349, 353, 600 P.2d 578 (1979). *See also Boyce v. Adams,* 87 Wn.2d 56, 549 P.2d 18 (1976); *State ex rel. Kern v. Emerson,* 90 Wash. 565, 155 P. 579 (1916). Under the circumstances of this case, the County in its role as property owner did not have sufficient control over the activities in the park to justify a finding that it permitted Ward to consume liquor on its premises. To hold otherwise would be to impose liability for the County's failure to exercise its police authority. This we decline to do, as we discuss later in this opinion.

Moreover, a violation of RCW 66.44.270 would not be a proper basis for imposing liability upon the County under the circumstances of this case. That statute appears to have been designed to protect minors from injuries resulting from their abuse of alcoholic beverages, not to protect third parties injured by intoxicated minors. *See Young v. Caravan Corp.,* 99 Wn.2d at 660. *Cf. Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity,* 258 Or. 632, 485 P.2d 18, 21, 53 A.L.R.3d 1276 (1971) (holding that an Oregon statute similar to RCW 66.44.270 was designed to protect minors from drinking alcoholic beverages, not to protect third persons from injuries resulting from the conduct of inebriated minors), *quoted in Hulse v. Driver,* 11 Wn. App. 509, 513 n.3, 524 P.2d 255, *review denied,* 84 Wn.2d 1011 (1974). That the statute does not make it unlawful to give or permit a minor to consume liquor if such is done with the consent of the minor's parents or guardian indicates that the statute was not designed for the protection of third persons. *See Davis v. Billy's Con–Teena, Inc.,* 284 Or. 351, 587 P.2d 75, 77 (1978). Because appellant is not a member of the class of persons RCW 66.44.270 was designed to protect, a violation of that statute by the County would not be actionable by appellant under a theory of negligence per se.[9] Restatement (Second) of Torts §§

---

[9]In *Callan v. O'Neil,* 20 Wn. App. at 38–39, Division One of this court recognized that minors are a class protected by RCW Title 66. *See also Young v.*

285(b), 286(a) & comment *f*, 288(d). We agree with Division Three of this court that violation of a criminal prohibition such as RCW 66.44.270 does not alone impose civil liability upon the violator. *Hulse v. Driver*, 11 Wn. App. at 513. Because this is not a proper case for us to adopt the requirements of RCW 66.44.270 as the standard of conduct of a reasonable person, we are bound by the rule of *Halvorson v. Birchfield Boiler, Inc., supra*, that the furnishing of liquor to an able–bodied person (including a minor, *see Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982)) is not, as a matter of law, the proximate cause of an injury resulting from that person's conduct while intoxicated. It follows from this rule that permitting an able–bodied person to consume liquor on one's premises would not, as a matter of law, have been actionable, even though that person was a minor. *See Wilson v. Steinbach*, 98 Wn.2d at 436–40.

2. Nuisance:

Hostetler argues that because of the County's negligence in permitting minors and others to consume liquor in the park, the park constituted a nuisance under RCW 7.48.[10]

---

*Caravan Corp.*, 99 Wn.2d at 660. The *Callan* court allowed the mother of the deceased passenger of an intoxicated minor to maintain an action, under a theory of negligence per se, against the tavern keeper who furnished liquor to the minor driver. The passenger also was an intoxicated minor to whom the tavern keeper served liquor unlawfully. Thus, the holding in *Callan* could be interpreted as permitting an action by the survivor of an intoxicated minor against the tavern keeper who unlawfully served the minor liquor when the latter's demise resulted from his improvident decision to ride with an intoxicated driver. *See, e.g., Brookins v. The Round Table, Inc.*, 624 S.W.2d 547 (Tenn. 1981).

However, in *Baughn v. Malone*, 33 Wn. App. 592, 595–96, 656 P.2d 1118 (1983), Division One held that in an action against a tavern keeper by the 23–year–old passenger of an intoxicated minor, a negligence per se theory, based upon the illegal sale of liquor to the minor, was applicable. As noted in the body of our opinion, we disagree with the proposition that a third party may maintain an action, under a theory of negligence per se, for the injuries caused by a minor who was served liquor in violation of RCW 66.44.270. *Accord, Hulse v. Driver*, 11 Wn. App. at 513 n.3.

[10]At common law, an action for a private nuisance could be maintained by an individual for interference with the use and enjoyment of land. *See Northern Pac.*

RCW 7.48.010 and RCW 7.48.120 define actionable nuisances.[11] Such nuisances are further categorized as "public," RCW 7.48.130,[12] and "private," RCW 7.48.150.[13] Generally, an action may be maintained by "any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance." RCW 7.48.020. However, in the case of a public nuisance, a private person

---

*R.R. v. Whalen,* 149 U.S. 157, 37 L. Ed. 686, 13 S. Ct. 822, 824 (1893). *See generally* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 87 (5th ed. 1984). A public nuisance was a crime, and also was actionable in tort if the plaintiff could show that he suffered harm that was particular to him, *i.e.,* harm distinguishable from that suffered by other members of the general public. *See generally* W. Keeton, D. Dobbs, R. Keeton & D. Owen, § 90. Under the Washington statutes, public nuisances may constitute crimes, *see* RCW 9.66, or may be the subject of civil actions by public officials or private individuals, RCW 7.48.200, .230. A private nuisance under the statute is defined more broadly than at common law, including more than just interferences with interests in land. *See* RCW 7.48.010, RCW 7.48.020, RCW 7.48.120–.150, RCW 7.48.240.

[11]RCW 7.48.010 states:
"Actionable nuisances defined. The obstruction of any highway or the closing of the channel of any stream used for boating or rafting logs, lumber or timber, or whatever is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property, is a nuisance and the subject of an action for damages and other and further relief."
RCW 7.48.120 states:
"Nuisance defined. Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property." *See also* RCW 7.48.160 (declaring certain activities exempt from classification as nuisances. *See Miotke v. Spokane,* 101 Wn.2d 307, 331, 678 P.2d 803 (1984)); RCW 7.48.240 (declaring certain "places of resort" nuisances).

[12]RCW 7.48.130 states:
"Public nuisance defined. A public nuisance is one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal." *See also* RCW 7.48.140 (enumerating certain public nuisances).

[13]RCW 7.48.150 states:
"Private nuisance defined. Every nuisance not included in the definition of RCW 7.48.130 is private."

may maintain a civil action only if the nuisance is "specially injurious" to him. RCW 7.48.210. Appellant alleges that the park constituted a public nuisance,[14] and that Gerald Hostetler's personal injuries satisfy the "special injury" requirement. *See* Restatement (Second) of Torts § 821C, comment *d* (1979).

In *Taylor v. Cincinnati*, 143 Ohio St. 426, 431–45, 55 N.E.2d 724, 727, 729–32 (1944), the Supreme Court of Ohio clarified the law of nuisance:

> Nuisance is a form of tort but it is not restricted to a single type of tortious conduct. "Nuisance" is a term used to designate the wrongful invasion of a legal right or interest. It comprehends not only the wrongful invasion of the use and enjoyment of property, but also the wrongful invasion of personal legal rights and privileges generally. However, such right or interest may be invaded by any one of several types of wrongful conduct, and the liability of a defendant, in any case, depends upon the type of his wrongful conduct with respect to the right or interest invaded. "The tort of * * * nuisance includes intentional harms, and harms caused by negligent, reckless or ultrahazardous conduct." 4 Restatement of Torts, 220.
>
> To properly consider and determine tortious liability in accordance with legal principles, it is necessary to differentiate and classify the several types of tortious conduct. In general, they may be designated as follows: (1) Culpable and intentional acts resulting in harm; (2) acts involving culpable and unlawful conduct causing unintentional harm; (3) nonculpable acts or conduct resulting in accidental harm for which, because of the hazards

---

[14]In addition to the general definition of nuisance and public nuisance discussed above, plaintiff cites RCW 7.48.140(8) and RCW 7.48.240. RCW 7.48-.140(8) declares:

> It is a public nuisance . . . [t]o suffer or maintain on one's own premises, or upon the premises of another, or to permit to be maintained on one's own premises, any place where wines, spirituous, fermented, malt, or other intoxicating liquors are kept for sale or disposal to the public in contravention of law
> . . .

RCW 7.48.240 states: "[A]ll houses or places within any city, town, or village, or upon any public road, or highway where drunkenness . . . [is] permitted . . . are nuisances . . ."

involved, the law imposes strict or absolute liability notwithstanding the absence of fault; and (4) culpable acts of inadvertence involving unreasonable risks of harm.
. . .

Confusion exists in statements of the legal basis of liability as applied to the law of nuisance because the term "nuisance" has been used indiscriminately to designate the harmful result, without reference to the distinction between what has been called absolute nuisance or nuisance *per se,* importing strict liability under legal principles above stated comprehending harms falling within types one, two and three, and other harms *in the nature of nuisance,* liability as to which is dependent upon negligence as described under type four.

Nuisance has been defined as a distinct civil wrong, consisting of anything wrongfully done or permitted which interferes with or annoys another in the enjoyment of his legal rights. 3 Cooley on Torts (4th Ed.), 85, Section 398. This definition is broad enough to cover both types of nuisances above referred to. But the fact is, the term "nuisance," in its strict and original meaning, was confined to cases which call for the application of absolute or strict liability.

Often there appear, quoted in court opinions, law text books and law encyclopedias, statements concerning the law of nuisance from which it might be inferred and indeed sometimes is inferred that negligence is, in no event, a factor or element in the law of nuisance. But an examination of the court opinions from which these statements or legal principles are taken and the cases cited in support of them, will disclose that they relate to and state the basis of liability in actions to abate nuisances or in actions for damages in cases of absolute nuisances involving harms arising from intentional trespasses, from unlawful conduct or from extra hazardous operations as defined under the doctrine of *Rylands* v. *Fletcher,* [L.R. 3 H.L. 330 (1868)], all constituting an interference with another in the enjoyment of his legal rights, for which conduct resulting in damage the law exacts absolute or strict liability.
. . .

Summarized, then, absolute nuisance may be defined as a distinct civil wrong, arising or resulting from the

invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything, or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights; the unlawfully doing of anything, or the permitting of anything under one's control or direction to be done, which results in injury to another; or the collecting and keeping on one's premises of anything inherently dangerous or likely to do mischief, if it escapes, which, escaping, injures another in the enjoyment of his legal rights.

But, as above stated, the term "nuisance" has also come to be applied to situations where liability is dependent upon the failure to exercise due care. *Hayes* v. *Brooklyn Heights Rd. Co.,* 200 N. Y., 183, 93 N. E., 469. Such application represents the fourth type of wrong as above classified. It most frequently consists of acts or conditions involving unreasonable risk of harm resulting in personal injury. In such case, of course, negligence must be averred and proven to warrant a recovery. Bates Pleading and Practice, 1925, Section 2171a. Applying such connotation, "nuisance" may be and frequently is the consequence of negligence.

. . .

As distinguished from absolute nuisance, a qualified nuisance or nuisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm which, in due course, results in injury to another.

In some instances traffic hazards associated with a condition on one's land may constitute a nuisance. *See, e.g., Shields v. Spokane Sch. Dist. 81,* 31 Wn.2d 247, 259, 196 P.2d 352 (1948). Negligence in maintaining a park may constitute a public nuisance. *Kilbourn v. Seattle,* 43 Wn.2d 373, 385, 261 P.2d 407 (1953). The nuisance in such a case is distinguishable from the negligence in that the former is a condition that is the result of wrongdoing, surviving the negligent act, while the latter involves the wrongdoing itself. *See* Dias, *Trouble on Oiled Waters,* 1967 Cambridge

L.J. 62, 78. If the drinking in the park by minors and others, and their subsequent ventures onto the highway, constituted a nuisance, the nuisance was the result of the County's negligence in failing to enforce the laws and ordinances prohibiting such drinking.

 We believe that, in cases such as the one at bench, where allegedly a nuisance is the result of negligence, rules applicable to negligence should be applied. *See Albin v. National Bank of Commerce*, 60 Wn.2d 745, 753, 375 P.2d 487 (1962); *Macy v. Chelan*, 59 Wn.2d 610, 614–15, 369 P.2d 508 (1962); *Scott v. Olivia*, 260 Minn. 346, 110 N.W.2d 21, 26 (1961); *Randall v. Excelsior*, 258 Minn. 81, 103 N.W.2d 131, 135 (1960); *Taylor v. Cincinnati*, 143 Ohio St. 426, 55 N.E.2d 724, 727–32 (1944). *See also* Prosser, *Private Action for Private Nuisance*, 52 Va. L. Rev. 997, 1027 (1966) (action for nuisance that resulted from negligence is, in fact and theory, indistinguishable from action for negligence). *Cf. Goggin v. Seattle*, 48 Wn.2d 894, 297 P.2d 602 (1956) and *Kilbourn v. Seattle, supra* (distinguishing public nuisances per se from nuisances per accidens, and holding that the latter "are clearly negligence actions," giving rise to former defense of governmental immunity). Accordingly, we decline to consider separately this negligence claim presented in the garb of nuisance.[15]

## B
### FAILURE TO ENFORCE THE LAWS

 Hostetler also alleges that the County is liable for Ward's tortious conduct because it failed to enforce certain laws pertaining to the control of alcoholic beverages. Spe-

---

[15]Although RCW 7.48.210 states that "[a] private person may maintain a civil action for a public nuisance, if it is specially injurious to himself but not otherwise", the statute is prudential in purpose, and does not allow the plaintiff to recover merely by proving that he has suffered particular harm caused "in fact" by another's actions that result in a "nuisance," as the latter term is defined in RCW 7.48.010. RCW 7.48.120 clearly requires proof of wrongdoing to support an action in nuisance. The required proof will vary, depending upon the type of wrongdoing involved. *See Taylor v. Cincinnati, supra;* Prosser, *Private Action for Private Nuisance*, 52 Va. L. Rev. 997, 1003–04 (1966).

cifically, plaintiff asserts the County failed to enforce RCW 66.44.110,[16] RCW 66.44.270,[17] and Pierce County Code 12.04.060(M).[18] Municipal corporations are, as a general rule, liable for damages arising out of the tortious conduct of their agents "to the same extent as if they were a private person or corporation". RCW 4.96.010. *See J & B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 304, 669 P.2d 468 (1983).[19] "The public duty doctrine recognizes that the duties of public officers are normally owed only to the general public and that a breach of such a duty will not support a cause of action by an individual injured thereby." *Bailey v. Forks*, 38 Wn. App. 656, 659, 688 P.2d 526 (1984), *review granted*, 103 Wn.2d 1012 (1985). *But see Turner v. Tacoma*, 72 Wn.2d 1029, 435 P.2d 927 (1967) (imposing liability upon a municipality for failure to abate a public nuisance).

However, in two classes of cases, our courts have recognized exceptions to the public duty doctrine. "First, if there is a clear statement of legislative intent to identify and protect a particular and circumscribed class of persons, a member of that class has an individual claim for violation

---

[16]RCW 66.44.110 was repealed by Laws of 1981, 1st Ex. Sess., ch. 5, § 49, p. 1770. At the time of the collision in the present case, RCW 66.44.110 provided: "[n]o person who is intoxicated shall be or remain in any public place . . ." RCW 66.04.010(23) includes a park within the definition of a "public place." See footnote 6.

[17]See footnote 7.

[18]Pierce County Code 12.04.060(M) states: "It is unlawful for any person to:
" . . .
"Open and/or consume alcoholic beverages in a park . . ."

[19]The County argues that a county's nonenforcement of the liquor control laws falls within the narrow rule of sovereign immunity recognized in *Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 255, 407 P.2d 440 (1965). The County has not demonstrated, however, that its failure to enforce the laws was a product of a considered policy decision, nor that the failure otherwise satisfied the criteria outlined in *Evangelical United Brethren Church*. Therefore, we reject the claim of sovereign immunity. *See Miotke v. Spokane*, 101 Wn.2d at 335-37; *Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 281-82, 669 P.2d 451 (1983); *King v. Seattle*, 84 Wn.2d 239, 246, 525 P.2d 228 (1974).

of the ordinance or statute creating the duty." *Bailey v. Forks,* 38 Wn. App. at 659–60. *See Hartley v. State,* 103 Wn.2d 768, 782–83, 698 P.2d 77 (1985). *See, e.g., Halvorson v. Dahl,* 89 Wn.2d 673, 574 P.2d 1190 (1978) (housing code created a duty to the occupants of certain buildings, a specially identifiable group); *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975) (emergency vehicle statute created a duty to individual members of the public); *Campbell v. Bellevue,* 85 Wn.2d 1, 13, 530 P.2d 234 (1975) (city code was designed for the benefit of persons residing within the area of the danger caused by nonconforming underwater lighting systems). "Second, if 'a special relationship' exists between the public officer and the plaintiff, a duty owed to the individual may arise." *Bailey v. Forks,* 38 Wn. App. at 660. Such a special relationship has been found where: (1) there is privity between the governmental agent and the injured party; and (2) the injured party relied upon the governmental agent's assurances of protection. *Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 669 P.2d 451 (1983). *See also Hartley v. State,* 103 Wn.2d at 782; *Campbell v. Bellevue,* 85 Wn.2d at 3–5, 10–13. Neither of these exceptions applies in the present case.

First, with regard to the liquor control laws that allegedly were not enforced, plaintiff has cited no authority, and we are aware of none, that provides a clear statement of legislative intent to identify and protect a particular and circumscribed class of persons of which Gerald Hostetler is a member. Second, there was no "special relationship" between Hostetler and the county employee that would impose a duty upon the employee to protect Hostetler's safety. The employee was not in contact with Hostetler; therefore, there was no privity between them, nor did Hostetler rely upon the employee for protection. Under the public duty doctrine, the County's failure to enforce its ordinance and the statutes is not negligence that is actionable by Hostetler.

# C

## NEGLIGENCE IN ANNOUNCING THE PARK'S CLOSURE

Finally, Hostetler argues that the County is liable for the negligence of its official in giving "notice to the youths and others of the park's impending closure and direct[ing] their transportation to the public roadway . . ." In rare cases, a person may be liable for failing to take reasonable precautions to protect anyone who foreseeably might be endangered by the conduct of a third party. *E.g., Petersen v. State,* 100 Wn.2d 421, 428, 671 P.2d 230 (1983). Liability in these cases arises when the defendant is in a special relationship with the third party that imposes upon the defendant a duty to control the third party's conduct. *See Petersen v. State, supra; Brockett v. Kitchen Boyd Motor Co.,* 264 Cal. App. 2d 69, 70 Cal. Rptr. 136, 138–39 (1968); Restatement (Second) of Torts §§ 315(a), 319 (1965) (One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.). *See also Hartley v. State,* 103 Wn.2d at 783; *Bailey v. Forks,* 38 Wn. App. at 661–62.

There is no allegation or evidence that the county employee made any direct contact with Ward individually or assumed responsibility for his conduct. Assuming all favorable inferences from the facts Hostetler alleged, the employee may have known that Ward was drinking in the park, and may have ordered a group of park visitors, including Ward, to leave at closing time. However, at no time did the employee exercise sufficient control over Ward to impose upon the employee a duty to prevent Ward from becoming intoxicated or venturing onto the highway in that condition. Indeed, the employee had no authority to arrest Ward. Our cases have imposed liability upon a governmental entity for breach of a duty to control third persons only in unusual cases involving full control over the third party tortfeasor. *See Hartley v. State,* 103 Wn.2d at 783; *Petersen v. State, supra. See also Hosea v. Seattle,* 64 Wn.2d

678, 393 P.2d 967 (1964); *Bailey v. Forks,* 38 Wn. App. at 661. This is not such a case.

Moreover, although Hostetler alleged that Ward was "handicapped" by the intoxicants he consumed, nowhere has he alleged that the county employee knew Ward was intoxicated, or that he intended to drive a car. A person's sobriety must be judged by the way he appears to those around him. *Young v. Caravan Corp.,* 99 Wn.2d 655, 659, 663 P.2d 834, 672 P.2d 1267 (1983); *Wilson v. Steinbach,* 98 Wn.2d 434, 439, 656 P.2d 1030 (1982); *Shelby v. Keck,* 85 Wn.2d 911, 915, 541 P.2d 365 (1975). Assuming the county official had "taken charge" of Ward, the failure to allege that the official knew Ward was "obviously intoxicated" is fatal to plaintiff's theory of recovery. *Cf. Torres v. Salty Sea Days, Inc.,* 36 Wn. App. 668, 674, 676 P.2d 512 (common carrier cannot be held liable for injuries sustained by an intoxicated passenger after leaving the carrier unless carrier had both actual knowledge of the passenger's incapacity and actual knowledge that the passenger intended to drive an auto), *review denied,* 101 Wn.2d 1008 (1984). The trial court was correct in dismissing Hostetler's actions against Pierce County.

Affirmed.

PETRICH and ALEXANDER, JJ., concur.