[No. 10991-3-II.   Division Two.   June 2, 1989.]

H. THEODORE RADFORD, *Appellant,* v. THE CITY
OF HOQUIAM, *Respondent.*

*Ralph D. Pittle* of *Medical Legal Consultants of Washington,* for appellant.

*Douglas C. Lewis* and *Brown, Edwards, Lewis & Janhunen,* for respondent.

ALEXANDER, C.J.—H. Theodore Radford appeals a judgment entered after a jury found that the City of Hoquiam was not negligent, and thus, bore no responsibility for injuries sustained by Radford when he fell from an unguarded platform at the City of Hoquiam's waste transfer station. Radford assigns error to the trial court's failure to grant his motion for a directed verdict on the issue of negligence, and to its admission of photographs depicting unguarded platforms at other publicly owned waste transfer stations.

On December 8, 1982, Radford was injured in a fall from an elevated dumping platform at a Hoquiam Municipal Garbage transfer station. Just before Radford fell, he had been standing at the rear of his pickup truck after having backed his truck to within 2 feet of the edge of the dumping platform. The platform was located above several metal receptacles into which members of the public could dump garbage. The outer edge of the dumping platform was bordered by a curbing strip; however, there were no other railings or restraint devices on the platform to prevent persons from falling into the metal containers. As Radford was standing on top of the curbing, he slipped and fell off the platform, catching his leg in the gap between the concrete

wall, which supported the platform, and one of the metal receptacles. Radford sustained an injury in the fall. He reported the incident to the station attendant and then left. Radford thereafter commenced this action in the Grays Harbor County Superior Court against the City of Hoquiam, claiming that the City was negligent in failing to install guardrails or other safety precautions to prevent members of the public from falling off the platform.

At trial, Radford produced four expert witnesses who testified that the design of the Hoquiam dumping platform did not conform to standards of practice in the industry, because it did not have safety precautions such as guardrails. These experts made reference to other public dump sites in the state as a basis for their opinions. Radford also introduced a photograph of the South Snohomish County garbage dump, which had the safety devices that were lacking here. In response, the City offered photographs of four other public dump sites in this state that did not have guardrails or other restraining devices on their dumping platforms. Radford objected to the introduction of these photographs, but the trial court admitted them, stating that they were relevant to rebut Radford's claim of an established standard in the industry.

Following the close of testimony, Radford moved for a directed verdict on the issue of negligence. He claimed that various administrative provisions of the Department of Labor and Industries Safety and Health Standards imposed a duty on the City to have guardrails, and that the testimony of the expert witnesses established that this was the standard of care in the industry. The motion was denied. The jury thereafter returned a verdict in favor of the City.

I

ADMISSION OF PHOTOGRAPHS

Radford first assigns error to the trial court's admission of the photographs depicting other public waste transfer

stations that did not have guardrails or other restraining devices at their loading platforms. He contends that the photographs were not relevant.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. ER 401. A trial court's determination regarding the relevancy of evidence under ER 401 will be reversed only upon a showing of manifest abuse of discretion. *Crescent Harbor Water Co. v. Lyseng*, 51 Wn. App. 337, 344, 753 P.2d 555 (1988). A manifest abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. *Lyseng*, 51 Wn. App. at 344.

Radford attempted to establish the applicable duty of care, with regard to the design of waste transfer stations, by making reference to what he claimed was the "standard of practice in the industry." Indeed, his expert witnesses described safety devices at other public dump sites as evidencing the standard of practice. Accordingly, evidence that other dump sites did not have guardrails or other restraining devices would be equally probative of whether this was the practice in the industry. Consequently, these photographs were relevant to rebut Radford's claim that the provision of guardrails was the established standard of practice in the industry.

Radford argues in the alternative, that industry practice is irrelevant on the issue of reasonable care because the failure to use guardrails is negligence as a matter of law. Thus, he contends, the pictures offered by the City should have been excluded. This argument overlooks the fact that Radford was the one who placed the standard of practice in the industry at issue. Because Radford raised the issue, the City was entitled to produce evidence to rebut his claim of an established practice in the industry. Accordingly, we find no error in the trial court's admission of the photographs.

## II
## MOTION FOR DIRECTED VERDICT

Radford next assigns error to the trial court's failure to grant a directed verdict on the issue of negligence. He contends that the City's failure to provide guardrails or other restraining devices at its dump site constituted negligence as a matter of law, either by virtue of (1) its violation of certain administrative provisions which Radford contends are applicable; or (2) its violation of the common law standard of care which Radford contends was established by the testimony of his expert witnesses.

■ A trial court exercises no discretion in ruling on a motion for a directed verdict and may grant the motion only where there is no competent evidence or reasonable inference that will sustain a jury verdict in favor of the nonmoving party. *Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 675, 709 P.2d 774 (1985). Accordingly, insofar as this is an action in negligence, we must determine whether there was any evidence, or reasonable inference therefrom, to support a jury determination that the City was not negligent in failing to provide restraint devices on its dumping platform.

The essential elements of actionable negligence are: (1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause relationship between the claimed breach and the resulting injury. *Hostetler v. Ward,* 41 Wn. App. 343, 349, 704 P.2d 1193 (1985), *review denied,* 106 Wn.2d 1004 (1986). The question of whether or not Hoquiam was negligent, accordingly, depends upon whether it had a duty to provide restraint devices, the breach of which was the proximate cause of the injuries alleged. Whether a defendant owes a duty to the complaining party is a question of law. *Hostetler,* 41 Wn. App. at 349. A defendant's duty may be predicated on violation of a statute or on common law principles of negligence. *Hostetler,* 41 Wn. App. at 349.

1. Violation of Administrative Provisions: Radford first contends that the City's failure to provide guardrails on the

dumping platform constituted negligence per se because it was a violation of the Department of Labor and Industries' WISHA regulations (Washington Industrial Safety and Health Act of 1973, RCW 49.17).[1] Specifically, Radford claims that the City violated WAC 296–24–75007, which provides in pertinent part as follows:

> Protection of open–sided floors, platforms and runways. (1) Every open–sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing . . . on all open sides, except where there is entrance to a ramp, stairway, or fixed ladder. . . .

The trial court rejected this contention, concluding that the WISHA regulations were enacted solely for the benefit of "employees" and not for the general public, and thus, Radford was not within the class of persons intended to be protected by the regulations.

Radford makes two arguments regarding the applicability of the WISHA regulations to the general public. First, he contends that the public is within the class of persons intended to be protected by the WISHA regulations. Second, he contends that the Department of Ecology, by virtue of its promulgation of WAC 173–301–160, incorporated the WISHA regulations for the benefit of the public with regard to waste transfer stations.

■ (a) Class of Persons Intended To Be Protected by WISHA: Whether the alleged violation of a public law or regulation is to be considered in determining liability depends, in part, upon whether the plaintiff is within the class of persons who are intended to be protected by the regulation. *Goucher,* 104 Wn.2d at 669–70.

The stated purpose of WISHA is "to assure, insofar as may reasonably be possible, safe and healthful *working*

---

[1] RCW 5.40.050, enacted as part of the tort reform act, provides that "A breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence; . . ." Because this action was filed before the effective date of the statute, it does not apply to this case.

*conditions* for every man and woman *working* in the state of Washington". (Italics ours.) RCW 49.17.010. Radford concedes that he was not an "employee" or engaged in work at the time of his injury. He argues, however, that public policy dictates that the safety regulations promulgated by the Department of Labor and Industries, pursuant to the requirements of WISHA, should be extended to protect the general public.

In support of his argument, Radford cites a California case, *Porter v. Montgomery Ward & Co.*, 48 Cal. 2d 846, 313 P.2d 854 (1957). In *Porter,* the California court extended the protection of regulations promulgated by the California Division of Industrial Safety to the public. The court stated that to limit protection to only those persons who come onto a defendant's premises at the direction of an employer would be unreasonable and produce an anomalous result. *Porter,* 313 P.2d at 856. The anomalous result contemplated by the court in *Porter* was the seemingly arbitrary distinction between persons who enter onto land in the course of employment, such as a secretary who enters a store on an errand for his or her employer, and a mere private citizen; the former being given the benefit of the safety regulations while the latter is denied any benefit. *See Porter,* 313 P.2d at 856. Radford argues that if the benefit of the WISHA regulations is limited to "employees," a similarly anomalous result is reached. We disagree.

We believe a proper application of the WISHA regulations may be divined from our Supreme Court's decision in *Goucher v. J.R. Simplot Co., supra.* In *Goucher,* the plaintiff, an employee of an independent contractor hired by the defendant, sustained injuries while working on the premises of the defendant. *Goucher,* 104 Wn.2d at 663–64. The plaintiff in *Goucher* attempted to establish liability on the part of the defendant, in part, upon the defendant's alleged violation of certain WISHA regulations. The defendant responded by arguing that the duty imposed by WISHA was a duty owed by an employer to *his* employees only, and thus, the plaintiff was not within the class of persons

intended to be protected by the regulations as he was not an employee of the defendant. The court rejected this contention, holding that all employees who *work on the premises* of another employer are members of the protected class for purposes of the specific duties imposed under WISHA. *Goucher,* 104 Wn.2d at 673. Accordingly, the plaintiff was found to be a member of the protected class.

In our judgment, the court in *Goucher* properly defined the class to be afforded the protections of the WISHA regulations, to include only those employees who *work on the premises* of the employer. Such a limitation on the application of the WISHA regulations is in accord with the stated purpose of the act, which is to assure a safe workplace. RCW 49.17.010. Such a limitation also avoids the anomalous result forecast in *Porter,* by limiting the scope of protected "employees" to those who work on the defendant's premises, as opposed to all persons who come on to a defendant's premises in the capacity of an employee. Clearly, Radford, who was not working on the premises, is not within the protected class. In our opinion, the trial court did not err in concluding that Radford was not within the protected class of persons intended to be protected by the WISHA regulations.

(b) Department of Ecology's Incorporation of WISHA Regulations: Radford contends that even if the WISHA regulations are not directly applicable to the general public, the Department of Ecology (DOE), in effect, adopted the regulations for the benefit of the general public by virtue of its promulgation of WAC 173–301–160, which provides as follows:

> Transfer stations—Safety. An adequate safety program shall be provided as outlined by the department of labor and industries.[2]

---

[2]WAC 173–301, which was in effect at the time of Radford's injury, has since been repealed. The new provisions, although similarly requiring the adoption of a safety plan or procedure, do not expressly refer to the Department of Labor and Industries. WAC 175–304–405(2)(i).

The regulation was enacted by DOE as part of its requirement to adopt minimum functional standards for solid waste handling (WAC 173–301), which standards are identified as including standards relating to "Hazards to service or disposal workers *or to the public.*" (Italics ours.) RCW 70.95.070(4). Radford argues that by enacting WAC 173–301–160, DOE adopted, by reference, the Labor and Industries safety standards for purposes of establishing the minimum standards for waste transfer stations. Radford further contends that because the DOE minimum functional standards are defined in part as relating to hazards to the public, DOE intended to extend the benefit of the Labor and Industries standards to the general public.

The City contends that the DOE regulation cited above merely referred to Labor and Industries' regulation regarding accident prevention programs (WAC 296–24–040), and not to the entire WISHA regulations. The requirements of the Labor and Industries accident prevention program, it reasons, do not specifically require the installation of specific safety devices, and hence could not be construed so as to impose a specific duty to install such device.

The City's argument is the most persuasive. The DOE regulation relied on by Radford merely requires the City to adopt a "safety program." There is nothing in the DOE regulations that indicates that DOE intended to subject operators of public waste transfer stations to the myriad of safety regulations contained in the WISHA regulations regarding the general public. Accordingly, the trial court did not err in denying Radford's motion for a directed verdict on the issue of negligence based on such regulations.

2. Common Law Negligence: Radford contends, finally, that even if the WISHA regulations are not applicable so as to establish a duty to install guardrails or other safety measures, the failure to do so constituted an unreasonable risk as a matter of law. Radford bases this contention on the testimony of his expert witness, which, he asserts, established that it was economically and technologically

feasible to reduce the risk of falling from the platform by installing restraint devices, and therefore, the failure to employ such measures constituted negligence as a matter of law.

Radford's argument ignores the division of responsibility between judge and jury. Although the determination of duty is a question of law for the court, it is the jury's function to decide the foreseeable range of danger. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 933, 653 P.2d 280 (1982). Stated another way, the jury decides whether the injury fell within the ambit of the duty as defined by the court. *Bernethy*, 97 Wn.2d at 934. The jury in the present case was instructed as follows regarding the duty owed by the City:

> The City of Hoquiam, as the owner and/or the operator of the Hoquiam City Dump, owes to a public invitee a duty to exercise ordinary care for his safety. This includes the exercise of ordinary care to maintain in a reasonably safe condition those portions of the premises which the invitee is expressly or impliedly invited to use or that he might reasonably be expected to use.

The jury was also instructed in accordance with the Restatement (Second) of Torts § 343, at 215 (1965), regarding the special liability of possessors of land to invitees. In addition, it was given the full text of the Labor and Industries regulation requiring guardrails for open–sided platforms, the violation of which, the jury was instructed, could be considered as evidence bearing on the question of the City's negligence.[3]

It was for the jury to decide whether an injury caused by the absence of a guardrail or other restraining device was within the ambit of the duty of "ordinary care" imposed upon the City. In this regard, the City's public works director testified that in his opinion, the Hoquiam transfer station posed no danger if the public exercised reasonable care. Furthermore, there was testimony that approximately

---

[3]No error has been assigned to the trial court's giving of this instruction and we make no comment as to its appropriateness.

100 people per week had used the facility since it was opened in 1977, and that only one other fall from the platform had occurred and in that case, the person who fell was intoxicated. In our judgment, there was competent evidence that could sustain a finding in favor of the City, that guardrails were not required as part of its duty to exercise ordinary care. Consequently, Radford was not entitled to a directed verdict on the issue of negligence.

We affirm.

REED and WORSWICK, JJ., concur.