Hope KANANEN and Brian
Kananen, Plaintiffs,

v.

The ALFRED I. DUPONT INSTITUTE
OF the NEMOURS FOUNDATION
a/k/a A.I. DuPont Hospital, Defendant.

C.A. No. 98C–08–225 SCD.

Superior Court of Delaware,
New Castle County.

Submitted: April 6, 2000.
Decided: May 4, 2000.

Kenneth M. Roseman, Ciconte Roseman & Wasserman, Wilmington, for Plaintiffs.

Daniel B. Rath, and Katherine R. Witherspoon, Klett Lieber Rooney & Schorling, Wilmington; and James Lewis Griffith, and John P. Halfpenny, Klett Lieber Rooney & Schorling, Philadelphia, Pennsylvania, for Defendant.

## MEMORANDUM OPINION

DEL PESCO, J.

Before this Court is an issue of first impression in Delaware: whether a hospital owes a duty to a non-patient bystander to warn her of the risk of fainting while observing a procedure in the emergency room. Defendant filed a motion for summary judgment alleging that it did not have a duty to a non-patient. Plaintiffs filed a cross-motion for summary judgment alleging that the defendant committed health care medical negligence as a matter of law.

## Factual Background

Plaintiff Hope Kananen[1] ("Kananen") took her three year old daughter to the Emergency Room at defendant A.I. DuPont Hospital (the "Hospital") for a laceration on her forehead. Kananen accompanied her daughter into the suture room. The facts as recited by Kananen in her deposition, are as follows:

Q: What did you do then after she was placed on the treatment table?

A: They wrapped her in the little blue thing and then they put a little blue cloth over top of the wound and they left it exposed so they could stitch it and the doctor said to the nurse, why don't you go out and get some books. She came back with a stack of books and one of the books on there was Cinderella, and T.K., that's our daughter, Taylor, she liked Cinderella at that time. So I picked that book to read to her and the doctor asked me to read to her while he was doing the procedure to relax her.

\* \* \*

Q: When the nurse came back in and brought you the books including Cinderella, what did you do?

A: I picked up the Cinderella book and the doctor instructed me to hold it over her head and read it so that she would see something that was comforting to her.

Q: Fair to say the doctor instructed you to hold the book so she could see the pictures?

A: Yes, hold it like that. (Indicating).

Q: Were you still standing at the side of the table at that time?

A: Yes.

Q: Did you ever move from that position?

A: Yes.

Q: All right. Well first, let me ask you, how long do you believe you were standing there holding Cinderella reading to your daughter?

A: Probably about two pages, two or three pages. Time wise, I don't know.

Q: Sure, I understand that. Why did you only go two or three pages before moving?

A: As I was reading the book, I glanced up at what the doctor was doing and he was putting a needle into her wound and I said I'm hot, I'm sick, I don't feel well.

Q: Was the nurse in the room again at this point?

A: Yes.

Q: Let me just make sure I have it correct. You stated to the doctor: "I'm hot, I'm sick. I don't feel well?"

A: Yes. That's what I told him because I was holding it and I said that.

Q: Do you recall saying anything else to the doctor?

A: No.

Q: All right.

A: Not then, no.

Q: I'm assuming you were addressing this at the doctor or were you addressing it both to the doctor and the nurse?

A: I said it out loud.

Q: Not addressing it to anyone in particular?

A: I just said it out loud.

Q: Did either one of them respond to you?

A: Yes.

Q: Who responded to you?

A: The nurse.

Q: What did she say?

---

**1.** Brian Kananen, Hope Kananen's husband, has filed a claim for loss of consortium.

A: She was standing at the opposite end of me holding my daughter's head steady and she said there's a stool over here and she was like moving her head motioning to where the stool was.

Q: Did she say anything other than there's a stool over here and then motioning with her head?

A: No.

Q: What about the doctor; did he say anything?

A: No.

Q: What did you do next?

A: I put the Cinderella book down at the end of the table. I walked around the table like behind the doctor and behind the nurse and I picked up the stool and I brought it back to where I had been standing and I sat down and at that point, the doctor said, hey, what happened to Cinderella, and I said, oh, its coming. And I grabbed the book at the end of the table and I picked it back up and held it over her head and I started to read again. I looked back up and the doctor was tying the first stitch and I said, I'm hot and I don't feel well and I don't remember anything after that.

\* \* \*

Q: Correct me if I'm wrong, I understood you to say before the break that when you first said, I'm hot, I'm sick, I don't feel well, your testimony was that the nurse responded there's a stool over there and she indicated with her head, correct?

A: Yes

Q: The nurse never instructed you to go pick up that stool, did she?

A: No.

Q: Nor did the doctor, correct?

A: No.

Q: You made the choice to go get the stool yourself, correct?

A: Yes.

\* \* \*

Q: Do you have any reason to believe that that stool that you picked up yourself, walked across the room, put at the head of the table and sat down on was defective in any way? Do you believe the stool was defective in any way?

A: No.

Q: Do you believe it was dangerous in any way?

A: I don't know, no.

Q: Do [sic] believe that the nurse did anything wrong in indicating to you that there was a stool on the other side of the room?

A: I don't know. I don't know. I don't know.

Q: I'm not following your answer. You don't know if she did anything wrong?

A: She was just holding my daughter's head and she said there is a stool over here. (Indicating).

\* \* \*

Q: Did you ever tell the doctor or nurse you felt dizzy?

A: I don't know.

Q: Did you ever tell them you felt nauseous?

A: I don't know.

Q: Did you tell them that you felt like you were going to pass out?

A: I don't know.

Q: If [sic] you tell them you felt like you were going to faint?

A: I don't know.

Q: Did you ask them for any medical assistance?

A: No.

Q: Did you attempt to seek any medical treatment from them at that time?

A: I don't know.

Kananen fainted and struck her head after sitting on the stool, causing a fractured skull and an injury to her brain.

### Defendant's Motion for Summary Judgment

The Hospital contends that it is entitled to summary judgment because, as a matter of law, a hospital is not liable for injuries to a non-patient bystander who faints in a hospital emergency room. The Hospital asserts that Kananen was an invitee, and its only duty was to warn her of a dangerous condition or protect her from a known or reasonably discoverable condition which poses an unreasonable risk of harm. Since there was no dangerous condition, no duty to her arose. In support of its motion, the Hospital cites several cases where courts ruled in favor of defendant hospitals after a non-patient bystander accompanying a relative into the emergency room fainted while observing the procedure.[2]

In response, Kananen contends that summary judgment is inappropriate because under the facts of this case, a duty arose. First, she argues that this case is distinguishable from the cases cited by the Hospital because the nurse asked Kananen to sit on a stool, thus assuming a duty to

her. Kananen alleges that the nurse violated the applicable standard of care by asking her to sit on a stool without back or side rails. Second, Kananen argues that by asking her to read to her daughter, the Hospital invited her to participate in her daughter's care, thus assuming a duty to her.[3]

### Plaintiffs' Cross–Motion for Summary Judgment

Kananen argues that the Hospital committed health care medical negligence as a matter of law, pursuant to Del. Code Ann. tit. 18 § 6801 (1999), because "[b]y responding to the plaintiff's expression of illness with a treatment instruction, the nurse was providing health care to a patient."[4] The Hospital responds that, if anything, this is a straightforward negligence claim, not a medical negligence claim, because Kananen was not a patient.

### Standard of Review

■ Summary judgment is appropriate where the moving party shows that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[5] In a negligence action, the existence of a duty is a question of law to be determined by the court.[6] If the court

2. *See Sacks v. Thomas Jefferson Univ. Hospital*, 684 F.Supp. 858 (E.D.Pa.1988); *Walters v. St. Francis Hospital*, 23 Kan.App.2d 595, 932 P.2d 1041 (1997); *McElwain v. Van Beek*, 447 N.W.2d 442 (Minn.Ct.App.1989); *Zenkina v. Sisters of Providence*, 83 Wash.App. 556, 922 P.2d 171 (1996).

3. Both parties have submitted affidavits from experts. Neither is useful in making a legal determination as to the hospital's duty to a non-patient bystander. The plaintiffs' expert asserts in conclusory fashion that the hospital violated the standard of care when the nurse "advised the plaintiff to be seated on a stool which did not have side rails, back support or a stable base." Affidavit of Audrey Stephan at 1. The predicate fact is that such advice was given. The record does not support that

directly, although a nod by the nurse might raise that inference. However, there must first be a duty. That is a legal issue, not a medical one. As to the defendant's affidavit, it suffers from the same infirmity. It offers the "opinion" that the plaintiff was not a "patient." Again, that is a legal conclusion, not a medical one, since there are no facts at issue.

4. Plaintiffs' Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment at 3 (Dkt. No. 47).

5. Super. Ct. Civil R. 56(c).

6. *Naidu v. Laird*, 539 A.2d 1064, 1070 (Del. 1988) (citing W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 37, at 236 (5th ed.1984)).

finds that the defendant owes no duty of care to the plaintiff, the defendant is entitled to summary judgment as a matter of law.[7]

## Discussion

### Medical Negligence

■ Kananen argues that the Hospital committed health care medical negligence as a matter of law, pursuant to Del. Code Ann. tit. 18 § 6801 (1999). In order to have a cause of action under § 6801, the plaintiff must be a patient. Patient is defined as "a natural person who receives or should have received health care from a licensed health care provider under a contract, express or implied."[8] Kananen contends she was a patient because while she was in the suture room, she "told a physician and a nurse that she was experiencing symptoms recognizable as a prelude to fainting. In response to [her] expression of symptoms, the nurse asked [her] to sit on a stool."[9] After reviewing Kananen's deposition, two things are clear; first, Kananen did not request medical assistance; second, the nurse did not ask Kananen to sit on the stool. Because I find that Kananen was not a patient, plaintiffs' cross-motion for summary judgment is DENIED.

### Negligence

■ In order to state a claim for negligence, there must be a duty, a breach of that duty, and injury resulting from the breach. The issue here is whether the defendant had a legal duty, or obligation, to protect plaintiff from the harm which caused her injuries.

Other jurisdictions have addressed the issue of a hospital's duty to a non-patient bystander. Those courts have held that a hospital owes no duty to protect a non-patient bystander from fainting in the emergency room. In *Sacks v. Thomas Jefferson University Hospital,*[10] the plaintiff was present in the treatment room while her daughter was getting stitches. While observing the procedure, the plaintiff stated she felt faint and fainted while exiting the room. The court found that plaintiff was not a patient and had voluntarily entered the treatment room with her daughter. The court granted defendant hospital's motion to dismiss, concluding that

> Parents have a duty to obtain medical attention for their children when the need arises. However, this only creates a duty of care on the part of the hospital not to injure the child and in no way imposes a special duty of care on the part of the hospital to protect the child's parents from encountering the unpleasantness of their children's injuries or the unpleasantness necessarily inherent in a medical emergency response to those injuries.[11]

Likewise, in *Walters v. St. Francis Hospital,*[12] the plaintiff fainted shortly after holding his fiancé's hand in the emergency room while a tube was inserted into her nose. The lower court granted the defendant hospital's motion for summary judgment, finding that the hospital did not

---

7. *O'Hara v. Holy Cross Hospital*, 137 Ill.2d 332, 148 Ill.Dec. 712, 561 N.E.2d 18, 20 (1990) (citing *Barnes v. Washington*, 56 Ill.2d 22, 305 N.E.2d 535 (1973)).

8. Del. Code Ann. tit. 18 § 6801(8) (1999).

9. Plaintiffs' Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment at 3 (Dkt. No. 47).

10. 684 F.Supp. 858..

11. *Id.* at 860.

12. 932 P.2d 1041..

breach any duty to the plaintiff. In affirming that decision, the appellate court stated:

> We conclude that ordinary and reasonable care does not require a hospital to warn an invitee that he or she might have an adverse reaction to witnessing a medical procedure. More specifically, a hospital has no duty to warn an invitee about the possibility of becoming queasy or fainting from witnessing a medical procedure because this is a danger that is open, obvious, and known to the invitee. The myriad of possible adverse reactions of an individual accompanying another to the hospital are not within the knowledge of the hospital. A contrary conclusion could open hospitals to claims that would cause hospitals to bar all visitors during all treatments.[13]

In *McElwain v. Van Beek*,[14] plaintiff was present in the emergency room while her younger brother was being treated. She fainted during the procedure. Plaintiff filed medical malpractice claims against the physician and the hospital. The court adopted the general rule of no duty, but recognized a duty to a non-patient bystander in two situations: where the patient poses a danger of harm to an identifiable third party or where the patient's behavior must be controlled to prevent a danger to a third party. The first type of duty arises when a psychiatrist is told by a patient that the patient intends to kill a specific person. The second type arises where a person with a gun fixation and violent tendencies is denied a privilege, such as access to a gun, and that privilege is restored as a result of a doctor's authority, with a random violent crime resulting. Finding neither type of

duty applicable to the facts of the case, the case was dismissed.

In *Zenkina v. Sisters of Providence in Washington, Inc.*,[15] plaintiff was invited into the suture room by hospital staff to translate while her nephew, who spoke little English, got stitches. She was also asked to hold her nephew's hand in case he tried to move. Plaintiff fainted when the doctor opened and began cleaning the wound. The lower court granted defendant hospital's motion for summary judgment. On appeal, the court determined that plaintiff was an invitee, and as such she was owed a duty of reasonable care. In affirming the lower court's decision and holding that a hospital does not have a duty to protect an invitee from fainting, the appellate court stated:

> Although the record reflects that perhaps a dozen relatives accompanying patients to this emergency room faint or become lightheaded in the course of a year, so that the risk of relatives fainting is certainly foreseeable, the risk is also obvious. To require hospitals to prevent relatives from fainting would be to require hospitals to bar them from the emergency room altogether. To require hospitals to warn relatives of the risk that they might faint at the sight of blood or at the sight of some medical procedure such as suturing or the giving of an injection would be to require hospitals to warn of a risk that is so well known as to require no warning at all. We decline to impose a duty to warn of a risk as obvious as this one.[16]

Illinois has found an exception to the general rule that there is no duty to a non-

13.  *Id.* at 1045.

14.  447 N.W.2d 442..

15.  922 P.2d 171.

16.  *Id.* at 176.

patient bystander. The exception arises when the bystander becomes a participant in treatment. In *O'Hara v. Holy Cross Hospital*,[17] plaintiff accompanied her son into the emergency room and fainted after wiping Novocaine from her son's mouth. The Court reasoned that such participation increases the risk that the person will become ill, and should not be necessary if the facility is properly staffed.[18]

 After reviewing the law in other jurisdictions and the facts of this case, I conclude that a hospital does not owe a duty to protect a non-patient bystander who is present in the emergency room from fainting. Kananen argues that even if the Hospital had no duty, the participation in patient care exception established in *O'Hara* is applicable to this case. Assuming, arguendo, that the *O'Hara* exception were adopted here, it would not change the outcome of this decision because Kananen was not participating in her daughter's care. By her own testimony, Kananen admits she was reading to *comfort* and *relax* her daughter while the doctor performed the procedure. The participation in patient care exception contemplates that the non-patient takes an active role in the patient's care. "Asking a family member or friend who accompanies a patient, particularly a child patient, to comfort the patient, even to help restrain him or her if the patient is indeed a child, is not the same as asking the family member or friend to participate in the medical treatment of the patient."[19]

There being no duty owed to Kananen, defendant's motion for summary judgment is GRANTED as a matter of law. Plaintiff Brian Kananen's loss of consortium claim, which is derivative of the negligence claim, is DISMISSED.

IT IS SO ORDERED.