IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KASSA KACHARA, | No. 82394-9-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| SWEDISH HEALTH SERVICES, | |
| Respondent. | |

SMITH, J. — Kassa Kachara slipped and fell at Swedish Medical Center while he was present for the birth of his daughter. Kachara claims that Swedish breached its duty to him as a business invitee by causing and negligently failing to clean up the puddle of liquid, which caused Kachara to slip and fall. The trial court granted summary judgment in favor of Swedish finding that there was no genuine issue of material fact due to the lack of evidence indicating that Swedish caused or had knowledge of the liquid on the floor. The court also denied Kachara's motion for reconsideration. Kachara asserts that there is sufficient circumstantial evidence for a jury to find that Swedish employees were responsible for the liquid spill. Finding no error, we affirm.

FACTS

On July 11, 2016, Kachara was at Swedish Medical Center for the birth of his daughter. Kachara and his friends went to get lunch at the hospital cafeteria on a lower level. After getting off of the elevator, Kachara walked down the

Citations and pin cites are based on the Westlaw online version of the cited material.

hallway in the direction of the "Café" sign on the wall. He stepped forward with his right foot, slipped on the floor, and stumbled forward losing his balance. Kachara fell forward towards the ground directly onto his left knee and immediately felt a burning pain in his knee.

Kachara had been to the cafeteria earlier that morning and saw movable bins in the hallway containing dirty linens. At the time that he fell, the movable bins were no longer in the hallway. Kachara did not see a wet floor sign or any liquid on the ground before he fell; however, soon afterwards he saw liquid and a wet white towel on the floor. After Kachara was helped up from the floor, an individual appeared and instructed employees to clean the spill and put up a wet floor sign.

The hallway where Kachara fell was mostly used by staff, but was also accessible to visitors. Aside from the linen cleaners and the material service center, no other employees or departments were assigned to work in the hallway. When Kachara fell, he was not under the influence of drugs, medication, or alcohol. He was wearing normal shoes, and he was not using his phone, or carrying any liquids.

On March 11, 2019, Kachara filed a complaint for damages against Swedish. Kachara claimed that Swedish breached its duty to him as a business invitee by negligently failing to clean up a puddle of liquid on the floor in a timely and safe manner. He further claimed that Swedish's negligence was the direct and proximate cause of Kachara's injuries. During the discovery process, Kachara introduced Bryan Jorgensen as a human factor forensic expert who

specialized in premise liability cases. Jorgensen testified, based on his review of photographs and a site inspection, that the size of the liquid spill "did not appear to have been caused by something that would be typically carried by a pedestrian," such as a splash of soda. He further testified that the wet towel found where Kachara fell may have been the source of the spill or may have been used to partially clean up the spill. Lastly, he testified that the nature of the liquid spill appeared to have been "associated with work being done by the hospital."

On December 3, 2020, Swedish moved for summary judgment of dismissal of Kachara's claim under CR 56(b), asserting that Kachara did not meet his evidentiary burden to prove duty, breach, causation, and damages. The trial court granted summary judgment in Swedish's favor and dismissed Kachara's lawsuit. The court reasoned that there was no evidence that Swedish had knowledge of the liquid on the floor, and that the towel at the scene, which was Kachara's strongest piece of evidence, was a different towel than the towels that Swedish uses to clean. Further, the court reasoned that while it was conceivable that an employee used the towel to clean the spill, it was also just as conceivable that someone who was not an employee tried to clean the spill or that the towel could have just fallen off of a laundry cart. Lastly, the court stated that it could not draw inferences from evidence that it did not have and there was no evidence of anyone specifically associated with the towel or how it got there.

Kachara then moved for reconsideration. Kachara asserted that the court should grant his motion for reconsideration under the same circumstantial

evidence that he presented at the summary judgment proceeding. The court denied his motion for reconsideration indicating that Kachara failed to satisfy CR 59 by merely reasserting the same arguments presented at the summary judgment hearing. Kachara appeals.

ANALYSIS

Kachara asserts that the trial court erred in granting the summary judgment motion in favor of Swedish and in denying his motion for reconsideration. Kachara claims that there is a genuine issue of material fact because circumstantial evidence could lead a jury to reasonably infer that Swedish caused the spill or had actual or constructive knowledge of the spill. Kachara's claim fails because there is no evidence that Swedish caused, knew, or should have known about the existence of the spill. Additionally, in Kachara's notice of appeal, he designated his order denying reconsideration. However, Kachara only assigned error to the denial of his motion for reconsideration and did not present any argument addressing the order denying motion for reconsideration in his appeal brief. Therefore, we do not consider whether the trial court erred in denying reconsideration.[1]

---

[1] RAP 10.3(a)(4); RAP 10.3(6) (requiring appellant's brief to include assignments of error and "argument in support of the issues presented for review"); see also Riley v. Iron Gate Self Storage, 198 Wn. App. 692, 713, 395 P.3d 1059 (2017) (declining to consider challenge to denial of motion for reconsideration where appellant did not present any argument or supporting authority in his appellate brief).

Standard of Review

Appellate courts review orders granting summary judgment de novo, engaging in the same inquiry as the trial court, and interpret the facts and reasonable inferences in the light most favorable to the nonmoving party. Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). A summary judgment motion will be granted only if it can be stated as a matter of law that "(1) there is no genuine issue as to any material fact, (2) all reasonable persons could reach only one conclusion, and (3) the moving party is entitled to judgment." Olympic Fish Products v. Lloyd, 93 Wn. 2d 596, 602, 611 P.2d 737 (1980). "In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact." Young v. Key Pharms., 112 Wn.2d 216, 225, 770 P.2d 182 (1989), aff'd in part and rev'd in part, Key, 130 Wn.2d 160, 922 P.2d 59 (1996). If the moving party succeeds in this initial burden, then the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue of material fact for trial. Ingersoll v. DeBartolo, Inc., 123 Wn.2d 649, 654, 869 P.2d 1014 (1994); Young, 112 Wn.2d at 225. If the nonmoving party at this point "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, then the trial court should grant the motion.'" Young, 112 Wn.2d at 225, (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). The nonmoving party to the motion for summary judgment "may not rely on speculation, argumentative assertions, "'or in having its affidavits considered at face value; for after the

moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.'" Becker v. Wash. State Univ., 165 Wn. App. 235, 245-46, 266 P.3d 893 (2011) (quoting Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). Lastly, we "may affirm on any basis that is supported by the record." Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

<u>Premises Liability Theory</u>

Kachara asserts that the trial court erred in granting summary judgment in favor of Swedish because Swedish hospital employees caused the unsafe spill on the floor and knew or should have known about the unsafe condition and failed to clean it. Specifically, Kachara claims that he demonstrated a genuine issue of material fact as to whether Swedish breached its duty to him. Kachara cites supporting circumstantial evidence, which includes the fact that Swedish employees predominantly used the hallway where he slipped, Swedish employees worked in close proximity to the hallway, there was a wet towel near the spill, and his expert's testimony that Swedish likely caused the spill. We disagree that this evidence is sufficient to establish a material issue of fact as to whether Swedish caused or knew about the spill and breached its duty to Kachara.

To prevail on a negligence claim the plaintiff must establish "(1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." Tincani v. Inland Empire

Zoological Soc'y., 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994); Pedroza v. Bryant, 101 Wn.2d 226, 228, 677 P.2d 166 (1984). Negligence "may be proved by circumstantial evidence." Falconer v. Safeway Stores, 49 Wn.2d 478, 479, 303 P.2d 294 (1956). "The circumstances proved must be consistent with each other and lead with reasonable certainty" to the defendant's negligence sought to be established. Falconer, 49 Wn.2d at 479.

In premises liability claims, the owner or occupier of the property owes a specific duty to an invitee, licensee, or trespasser depending on that status. Zenkina v. Sisters of Providence in Wash., 83 Wn. App. 556, 560, 922 P.2d 171 (1996). In our case, the parties agree that Swedish owed Kachara a duty of ordinary care as a business invitee at the hospital. An invitee can be a business visitor who is invited to "enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land." Zenkina, 83 Wn. App. at 561; Younce v. Ferguson, 106 Wn.2d 658, 667, 724 P.2d 991 (1986). "An invitee is owed a duty of ordinary care." Younce, 106 Wn.2d at 667. "Ordinary care requires maintaining the premises in a reasonably safe condition, and the affirmative duty of discovering any dangerous conditions[.]" Zenkina, 83 Wn. App. at 561; Radford v. City of Hoquiam, 54 Wn. App. 351, 360, 773 P.2d 861 (1989); Egede–Nissen v. Crystal Mountain, Inc., 93 Wn.2d 127, 132, 606 P.2d 1214 (1980) (citing Restatement (Second) Torts § 343, Comment b (1965)) ("invitee entitled to expect possessor will discover any latent defects and to give such warning that the visitor may decide intelligently whether to accept the invitation or to protect herself against the danger if she does accept the

invitation").

The owner of land is subject to liability for physical harm caused to his invitees if they:

> (a) know[ ] or by exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Tavai v. Walmart Stores, 176 Wn. App. 122, 128, 307 P.3d 811 (2013); Restatement (Second) of Torts § 343 (1965). "In general, the duty to exercise reasonable care to protect invitees from harm is triggered upon the invitee's showing that the premises owner had actual or constructive notice of the hazardous condition." Tavai, 176 Wn. App. at 128; O'Donnell v. Zupan Enters., 107 Wn. App. 854, 858, 28 P.3d 799 (2001).

Here, Kachara claims that Swedish was negligent by failing to clean the spill because it had a duty to him and either caused, knew, or should have known about the spill due to exercising near exclusive control over the hallway. Kachara supports his assertion that Swedish either caused, knew, or should have known about the spill and was negligent for not cleaning it by pointing to his expert's testimony and circumstantial evidence from which a jury could draw that conclusion. First, he points to the fact that the hallway was typically occupied by Swedish staff. Second, he points to the fact that the carts containing linens are in the area on a consistent basis. Third, he points to the fact that there was a wet towel near the spill that caused the spill or was likely used to try to clean the spill. Fourth, he points to the fact that he did not cause the spill.

Kachara's expert, Bryan Jorgensen, testified that Swedish employees likely caused the spill. Jorgensen made three determinations that support his conclusion. Jorgensen first determined that the size of the liquid indicated that it did not appear to be caused by Kachara. Next, Jorgensen determined that the liquid spill appeared to have been associated with hospital work. Lastly, Jorgensen determined that the wet towel was involved in the spill.

However, Kachara failed to establish an issue of fact through his circumstantial evidence and expert's testimony that Swedish caused the spill or knew about the spill and failed to clean it because "[c]ircumstances equally consistent with contradictory hypotheses are insufficient to establish the material fact and leave it in the realm of speculation." Falconer, 49 Wn.2d at 479. The hospital hallway was not exclusively occupied by staff, it was open to hospital visitors and guests. Kachara and his friends easily accessed the hallway and walked in the direction of the wall with the "Café" sign in their attempt to get lunch. In addition, the fact that there had previously been carts with linens in the hallway does not tend to prove that a towel from the linen cart caused the spill or that a Swedish employee moved the cart causing the towel to fall. The towel could have fallen from the carts or it could have been brought there by a non-employee, but there is no evidence linking the carts or an employee to the spill and the towel.

Finally, the fact that there was a wet towel near the spill, the fact that Kachara did not cause the spill, and the expert's testimony that the size of the liquid spill did not appear to be caused by a pedestrian or visitor and appeared to

9

have been associated with hospital work, is not evidence that the spill was caused by a Swedish employee. It is just as probable that a non-employee moved the carts causing the towel to fall or picked up a wet towel from the carts and dropped it in the hallway without Swedish's knowledge. Furthermore, it is just as probable that a non-employee caused the spill, or that a non-employee used the towel to try to clean the spill because the liquid did not seem to be one exclusively related to Swedish and the wet towel found was not one that was normally used by the hospital to clean spills. We therefore conclude that although Swedish owed a duty of care to Kachara as a business invitee, the evidence is not sufficient to prove that Swedish was negligent and breached that duty.

Kachara disagrees and contends that Falconer and Getchell v. Rogers Jewelry, 203 Cal. App. 4th 381, 136 Cal. Rptr. 3d 641 (2012), are analogous. However, neither of these are persuasive. In Falconer, a pedestrian slipped on a piece of meat on the sidewalk by a meat market. 49 Wn.2d at 478. The meat market customarily disposed of its scraps and meat trimmings on Tuesdays and Fridays by putting them in uncovered cans, which were then taken on a dolly through the sidewalk to a truck. Falconer, 49 Wn.2d at 479. The jury returned a verdict for the pedestrian. Falconer, 49 Wn.2d at 479. The meat market owner appealed, contending that there was no proof that the market had notice that the meat was on the sidewalk, so the meat market could not be held liable for any damage therefrom. Falconer, 49 Wn.2d at 479. The Washington Supreme Court affirmed the jury's verdict for the pedestrian. Falconer, 49 Wn.2d at 480. The

court reasoned that although there was no direct evidence that the meat market dropped the piece of meat, the circumstantial evidence that the meat market customarily disposed its meat in uncovered cans on certain days supported the conclusion that the meat market caused the dangerous condition on their premises.  Falconer, 49 Wn.2d at 480.

Unlike in Falconer, where there was evidence that it was customary for the meat market to dispose of its scraps and meat trimmings by transferring them from the market across the same sidewalk where pedestrians walked, here there is no evidence that the spill could not have been caused by a non-employee or that a non-employee did not pick up a white towel from the linen cart to clean a spill.  Falconer, 49 Wn.2d at 479-80; Ruff v. Fruit Delivery Co., 22 Wn.2d 708, 720, 157 P.2d 730 (1945) (Circumstances equally consistent with contradictory hypotheses are insufficient to establish the material fact and leave it in the realm of speculation).

In Getchell, a business invitee slipped and fell on jewelry cleaning solution in the breakroom of the defendant, Rogers Jewelry Store.  203 Cal. App. 4th at 384-87.  The trial court entered summary judgment in favor of the defendant, on the grounds that the defendant did not have knowledge because there was no direct evidence of how the cleaning solution got on the floor.  Getchell, 203 Cal. App. 4th at 384.  However, the appellate court reversed the trial court's judgment. Getchell, 203 Cal. App. 4th at 383.  The court reasoned that when "'the evidence is such that a reasonable inference can be drawn that the condition was created by employees of the [defendant], then [the defendant] is charged with notice of

11

the dangerous condition.'" Getchell, 203 Cal. App. 4th at 386 (emphasis omitted); (quoting Oldham v. Atchison Ry. Co., 85 Cal. App. 2d 214, 219, 192 P.2d 516 (1948)).

Even if Getchell was binding on this court,[2] it is still distinguishable from this case. In Getchell, the break room was under the exclusive control of the defendant and its employees, and the liquid on the floor was jewelry cleaning solution which only the employees had access to. Therefore, the evidence was such that a reasonable inference could be drawn that the condition was created by employees of the defendant. Here, although the hallway was mostly used by employees, it was open to patients, visitors, and guests. Swedish did not have exclusive control of the area like the defendant did in Getchell.

Kachara does not provide sufficient evidence to establish a material issue of fact as to whether a Swedish employee caused the spill or otherwise had actual or constructive knowledge of the spill to trigger Swedish's liability. Therefore, the trial court correctly granted summary judgment in favor of Swedish.

We affirm.

_____

WE CONCUR:

_____          _____

---

[2] Out-of-state cases are not binding on this court. Citizens All. for Prop. Rts. v. San Juan Cty., 181 Wn. App. 538, 546, 326 P.3d 730 (2014), aff'd, 184 Wn.2d 428, 359 P.3d 753 (2015).